CENTER FOR DISABILITY ACCESS
Isabel Masanque, Esq., SBN 292673
Chris Carson, Esq., SBN 280048
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Mary Melton, Esq., SBN 164407
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Scott Johnson**,<br><br>    Plaintiff,<br><br>    v.<br><br>**TCC Union Square, L.P.,** a California Limited Partnership; **Tiburon Capital Corporation**, a California Corporation; **KPH Management LLC**, a California Limited Liability Company; and Does 1-10,<br><br>    Defendants. | **Case No**.<br><br>**Complaint For Damages And Injunctive Relief For Violations Of:** American's With Disabilities Act; Unruh Civil Rights Act |

Plaintiff Scott Johnson complains of Defendants TCC Union Square, L.P., a California Limited Partnership; Tiburon Capital Corporation, a California Corporation; KPH Management LLC, a California Limited Liability Company; and Does 1-10 ("Defendants"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. Plaintiff is a

1

Complaint

level C-5 quadriplegic. He cannot walk and also has significant manual dexterity impairments. He uses a wheelchair for mobility and has a specially equipped van.

2. Defendants TCC Union Square, L.P. and Tiburon Capital Corporation owned the real property located at or about 450 Post Street, San Francisco, California, in December 2016.

3. Defendants TCC Union Square, L.P. and Tiburon Capital Corporation owned the real property located at or about 450 Post Street, San Francisco, California, in June 2017.

4. Defendants TCC Union Square, L.P. and Tiburon Capital Corporation owned the real property located at or about 450 Post Street, San Francisco, California, in July 2017.

5. Defendants TCC Union Square, L.P. and Tiburon Capital Corporation owned the real property located at or about 450 Post Street, San Francisco, California, in August 2017.

6. Defendants TCC Union Square, L.P. and Tiburon Capital Corporation owned the real property located at or about 450 Post Street, San Francisco, California, in September 2017.

7. Defendants TCC Union Square, L.P. and Tiburon Capital Corporation owned the real property located at or about 450 Post Street, San Francisco, California, in October 2017.

8. Defendants TCC Union Square, L.P. and Tiburon Capital Corporation own the real property located at or about 450 Post Street, San Francisco, California, currently.

9. Defendant KPH Management LLC owned the Kensington Park Hotel located at or about 450 Post Street, San Francisco, California, in December 2016.

10. Defendant KPH Management LLC owned the Kensington Park Hotel

Complaint

located at or about 450 Post Street, San Francisco, California, in June 2017.

11. Defendant KPH Management LLC owned the Kensington Park Hotel located at or about 450 Post Street, San Francisco, California, in July 2017.

12. Defendant KPH Management LLC owned the Kensington Park Hotel located at or about 450 Post Street, San Francisco, California, in August 2017.

13. Defendant KPH Management LLC owned the Kensington Park Hotel located at or about 450 Post Street, San Francisco, California, in September 2017.

14. Defendant KPH Management LLC owned the Kensington Park Hotel located at or about 450 Post Street, San Francisco, California, in October 2017.

15. Defendant KPH Management LLC owns the Kensington Park Hotel ("Hotel") located at or about 450 Post Street, San Francisco, California, currently.

16. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

17. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with

Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

18. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

19. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

20. Plaintiff went to the Hotel on a number of occasions during the relevant statutory period, including December 2016, June 2017, July 2017, August 2017, September 2017 and October 2017.

21. The Hotel is a facility open to the public, a place of public accommodation, and a business establishment.

22. Guestrooms are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Hotel.

23. Defendants did not offer persons with disabilities with a range of options equivalent to other customer. The required accessible rooms were not dispersed among the various classes of sleeping accommodations available to patrons, including with respect to the number of beds provided.

24. Plaintiff needed two beds—one for himself and for his aide, who assists him.

25. Additionally, the Hotel's website did not allow customers to book accessible guestrooms online.

26. Currently, Defendants do not offer persons with disabilities with a range of options equivalent to other customers. The required accessible rooms are not dispersed among the various classes of sleeping accommodations

4

available to patrons, including with respect to the number of beds provided.

27. Currently, the Hotel's website does not allow customers to book accessible guestrooms online.

28. Additionally, on information and belief, the Hotel does not have enough accessible guestrooms for use by persons with disabilities. Plaintiff alleges that there is only one guestroom reserved for persons with disabilities. There is no roll-in shower in that room.

29. Transaction counters are another one of the facilities, privileges, and advantages offered by Defendants to patrons of the Hotel.

30. The transaction counter at the Hotel was more than 36 inches in height. In fact, the transaction counter is 42 inches high.

31. There was no lowered, 36 inch portion of the transaction counter at the Hotel for use by persons in wheelchairs.

32. Currently, the transaction counter at the Hotel is more than 36 inches in height.

33. Currently, there is no lowered, 36 inch portion of the transaction counter at the Hotel for use by persons in wheelchairs.

34. Plaintiff personally encountered these barriers.

35. These inaccessible conditions denied the plaintiff full and equal access and caused him difficulty and frustration.

36. The barriers existed during each of Plaintiff's visits in 2016 and 2017.

37. The plaintiff frequents the San Francisco area and has visited there on many occasions in 2016 and 2017. He went inside the Hotel in December 2016 and stayed the night in August 2017 and September 2017 and personally encountered the barriers. He visited the Hotel on six other occasions but was deterred from going inside.

38. Plaintiff visited the Hotel once in December 2016.

39. Plaintiff visited the Hotel once in June 2017.

Complaint

40. Plaintiff visited the Hotel once in July 2017.

41. Plaintiff visited the Hotel three times in August 2017.

42. Plaintiff visited the Hotel once in September 2017.

43. Plaintiff visited the Hotel two times in October 2017.

44. Plaintiff would like to return and patronize the Hotel but will be deterred from visiting until the defendants cure the violations.

45. The defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

46. The violations identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

47. Defendants could also easily place a second bed in an accessible room.

48. Another common barrier removal project is modifying transaction counters to make a portion of the counter accessible. This is a simple construction task, well within the capabilities of any general contractor. The task can be completed easily and for a modest price.

49. Plaintiff is and has been deterred from returning and patronizing the Hotel because of his knowledge of the illegal barriers that exist. Plaintiff will, nonetheless, return to the business to assess ongoing compliance with the ADA and will return to patronize the Hotel as a customer once the barriers are removed.

50. Given the obvious and blatant violation, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the Complaint to provide

proper notice regarding the scope of this lawsuit once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 506 F.3d 1191 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to her disability removed regardless of whether he personally encountered them).

51. Additionally, on information and belief, the plaintiff alleges that the failure to remove these barriers was intentional because: (1) these particular barriers are intuitive and obvious; (2) the defendants exercised control and dominion over the conditions at this location and, therefore, the lack of accessible facilities was not an "accident" because, had the defendants intended any other configuration, they had the means and ability to make the change.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

52. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

53. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

    a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or

7

Complaint

   accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).
   b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."
   c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

54. Under the ADA, a hotel must provide persons with disabilities a range of options equivalent to those available to other persons served by the facility. Sleeping rooms and suites required to be accessible must be dispersed among the various classes of sleeping accommodations available to patrons of the hotel and this takes into account the number of beds provided. See 1991 Standards § 9.1.4.

55. Here, the failure to provide a range of options equivalent to those available to other persons served by the facility is discriminatory and a violation.

56. Under the ADA, public accommodations that own or operate a place of lodging have an obligation to "ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms." 28 C.F.R. §

Complaint

36.302(e)(1)(i).

57. Here, the Hotel's failure to provide disabled individuals the ability to book accessible guestrooms online through their website, like non-disabled individuals, is a violation ADA.

58. When transient lodging is provided, i.e., motels, hotels and similar establishments, there must be a certain number of accessible sleeping rooms or suites. 1991 Standards § 9.1.2. When there are between 76 and 100 rooms, there must be four guestrooms that are accessible.

59. Here, only one guestroom is reserved for persons with disabilities.

60. In areas used for transactions where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of each type shall have a portion of the counter which is at least 36 inches in length with a maximum height of 36 inches above the floor. 1991 Standards § 7.2(1). Under the 2010 Standards, where the approach to the sales or service counter is a parallel approach, such as in this case, there must be a portion of the sales counter that is no higher than 36 inches above the floor and 36 inches in width and must extend the same depth as the rest of the sales or service counter top. 2010 Standards § 904.4 & 904.4.1.

61. Here, no such accessible transaction counter has been provided in violation of the ADA.

62. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

63. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

64. Given its location and options, plaintiff will continue to desire to patronize the Hotel but he has been and will continue to be discriminated

against due to the lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

65. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

66. Because the defendants violated the plaintiff's rights under the ADA, they also violated the Unruh Civil Rights Act and are liable for damages. (Cal. Civ. Code § 51(f), 52(a).)

67. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Cal. Civ. Code § 55.56(a)-(c).)

68. Although the plaintiff was markedly frustrated by facing discriminatory barriers and this frustration possibly qualifies as an emotional distress injury, even manifesting itself with minor and fleeting physical symptoms, the plaintiff does not value this very modest frustration and physical personal injury greater than the amount of the statutory damages.

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the

plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

    2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000.

    3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: January 8, 2018        CENTER FOR DISABILITY ACCESS

By: *Isabel P. M~* 
_____
Isabel Masanque, Esq.
Attorney for Plaintiff

Complaint